J-A08028-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEPHEN ROZNIAKOWSKI | : | |
| | : | |
| Appellant | : | No. 1733 EDA 2022 |

Appeal from the PCRA Order Entered June 2, 2022
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0002367-2015

BEFORE:  BOWES, J., OLSON, J., and McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 25, 2024**

Appellant, Stephen Rozniakowski, appeals from the June 2, 2022 order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541–9546.  We affirm.

The PCRA court previously set forth the relevant facts and procedural history of this case as follows.

> On Monday, December 15, 2014, at approximately [6:00 p.m., Appellant] was served with a Protection From Abuse [Order] sworn against him by Valerie Morrow.  A few hours later, at approximately 9:12 p.m., [Appellant, a part-time police officer,] broke into the Morrow residence . . . heavily armed, wearing a bullet-proof vest and carrying a portable police radio.  He immediately proceeded upstairs and shot [and killed] Valerie Morrow[.]  He then turned fire onto [Valerie Morrow's] minor daughter who [had] retreated to her bedroom in an attempt to hide from [Appellant.  Valerie Morrow's daughter] was shot in [the] arm, sustaining an injury to her lower bicep area.  … [Appellant] then exchanged gun fire with [Valerie Morrow's] husband, Thomas Morrow.  [At that that time, Thomas Morrow was a correctional officer in Montgomery County, Pennsylvania,

as well as a part-time police officer]. When [Thomas] Morrow heard [Appellant] in the hallway reloading his firearm[, he feared] that [Appellant] would start shooting at him[. As such, Thomas Morrow] pushed the screen out of the second[-]floor window and leap[t] out of the house to the ground below. … [Appellant] was wounded during the gun fire exchange and taken into custody. [Appellant] was charged with [first-degree murder], aggravated assault and [other] related offenses in connection with the shooting death of Valerie Morrow, and the wounding of her daughter[.]

On November 29, 2017, with trial set for capital murder, [Appellant] entered a negotiated guilty plea to [first-degree murder] and was sentenced to a period of incarceration of life without parole. He also entered a negotiated guilty plea to aggravated assault and was sentenced to a period of incarceration [with] a minimum of [10] years [and] a maximum of [20] years, to run consecutive to the sentence of life without parole. At the time of sentencing, [the trial court] ordered that [Appellant] was prohibited from having any direct or indirect contact with the [Valerie Morrow's] family. Neither post-sentence motions nor any appeal were filed.

Court Opinion, 10/30/18, at 1-2 (unnecessary capitalization omitted).

Thereafter,

On February 2, 2018, Appellant posted a picture of himself and [Valerie] Morrow on Facebook, with the caption, "Forever in my heart." On July 2, 2018, the Commonwealth filed [a p]etition, asking the trial court to "prohibit[] [Appellant] from using Facebook or other forms of social media or electronic communication to have direct or indirect contact with [Valerie Morrow's] family, and that any existing post(s) depicting or referencing [Valerie Morrow] be removed immediately." The Commonwealth's certificate of service attached to the [p]etition confirmed that Appellant's counsel was served with notice thereof; however, according to the trial court, counsel was no longer representing Appellant when that service was made. Despite that Appellant had not been served with the [p]etition, on July 16, 2018, the trial court entered an order granting [the Commonwealth's request]. As per the Commonwealth's request[], the order stated: "[Appellant] is prohibited from using Facebook or other forms of social media or electronic

communication to have direct or indirect contact with [Valerie Morrow's] family. Any existing post(s) depicting or referencing [Valerie Morrow] is ORDERED to be removed immediately."

***Commonwealth v. Rozniakowski***, 2019 WL 2372964, at *1 (Pa. Super. June 5, 2019) (internal citations omitted) (non-precedential decision). On June 5, 2019, this Court vacated the trial court's social media order and remanded the matter for further proceedings. ***Id.***

While Appellant's appeal was pending before this Court, on December 3, 2018, Appellant filed a PCRA petition. On February 6, 2019, the PCRA court appointed counsel, who subsequently filed an amended PCRA petition on Appellant's behalf. On March 29, 2022, the PCRA court issued notice of its intent to dismiss Appellant's petition pursuant to Pa.R.Crim.P. 907. Appellant did not file a response. On June 2, 2022, the PCRA court dismissed Appellant's petition. This timely appeal followed.[1]

_____

[1] Appellant filed a timely *pro se* notice of appeal. Appellant also filed a *pro se* motion requesting the court to appoint new counsel, averring that he and his current counsel had irreconcilable differences. As such, Appellant's counsel was then granted leave to withdraw on June 28, 2022. Thereafter, on July 27, 2022, Appellant renewed his request for new counsel *via* motion. The PCRA court then issued an order on August 16, 2022 denying Appellant's request for counsel, claiming it lacked jurisdiction to consider his request. On September 7, 2022, this Court issued an order directing the PCRA court to determine whether Appellant was entitled to counsel and, if so, to appoint counsel for Appellant. On October 24, 2022, the PCRA court appointed Stephen D. Molineaux, Esquire, to serve as Appellant's counsel.

Thereafter, on November 15, 2022, the PCRA court issued an order directing Appellant, through his newly-appointed counsel, to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Upon request, the PCRA court subsequently permitted Appellant to file his Rule
*(Footnote Continued Next Page)*

1925(b) statement on or before February 2, 2023. There is no Rule 1925(b) statement reflected on the docket or contained in the certified record.

Ordinarily, the "failure to comply with the minimal requirements of Pa.R.A.P. 1925(b) will result in automatic waiver of the issues raised." **Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.**, 88 A.3d 222, 224 (Pa. Super. 2014) (*en banc*) (citation and emphasis omitted); **see also Commonwealth v. Castillo**, 888 A.2d 775, 780 (Pa. 2005) (explaining that an untimely concise statement waives all claims on appeal); **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) ("[F]rom this date forward . . . [a]ppellants must comply whenever the trial court orders them to file a [s]tatement of [errors] [c]omplained of on [a]ppeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement will be deemed waived."). Importantly, however, this Court has previously found that, if the failure to file a timely Rule 1925(b) statement is the result of a breakdown in the court system, this Court may address the merits of an appellant's claims on appeal. **See Commonwealth v. Parks**, 768 A.2d 1168, 1171 (Pa. Super. 2001) (reaching the merits of the appellant's claims after determining that "counsel's failure to comply with the [t]rial [c]ourt's order [14] days of its docketing was obviously due, in this instance, to a breakdown of the court system"). Moreover, Rule 1925(c)(3) of the Pennsylvania Rules of Appellate Procedure states:

> If an appellant represented by counsel in a criminal case was ordered to file and serve a [concise s]tatement and either failed to do so, or untimely filed or served a [concise s]tatement, such that the appellate court is convinced that counsel has been *per se* ineffective, and the trial court did not file an opinion, the appellate court may remand for appointment of new counsel, the filing or service of a [concise s]tatement *nunc pro tunc*, and the preparation and filing of an opinion by the judge

Pa.R.A.P. 1925(c)(3); **see Commonwealth v. Burton**, 973 A.2d 428, 433 (Pa. Super. 2009) (*en banc*) (declining to find the appellant's claims waived on appeal in view of Pa.R.A.P. 1925(c)(3)).

Herein, we initially note that, in his brief, Appellant attaches a Rule 1925(b) statement that appears to be time-stamped by the Office of Judicial Support in Delaware County, Pennsylvania on February 2, 2023. **See** Appellant's Brief at Appendix C. In addition, in its 1925(a) opinion, the PCRA court states that, on "February 2, 2023, counsel for [Appellant] filed [his Rule 1925(b)
*(Footnote Continued Next Page)*

Appellant raises the following issue on appeal:

> Whether the PCRA court erred in dismissing [Appellant's] PCRA petition where the record clearly showed that [Appellant] was denied effective assistance of counsel, as guaranteed by the Pennsylvania and United States['] Constitutions, when trial counsel erred by failing to investigate the termination of employment of a key witness, Thomas Morrow, for willful falsification and whose anticipated testimony was instrumental in [Appellant's] decision to enter a guilty plea[?]

Appellant's Brief at 5 (unnecessary capitalization omitted).

On appeal, Appellant argues that trial counsel's ineffectiveness caused him to enter an invalid guilty plea. More specifically, Appellant claims that, prior to the entry of his guilty plea, trial counsel "specifically advised" him that Thomas Morrow, as an active police officer, "would be seen as [a] very credible [witness]." Appellant's Brief at 12-13. Per Appellant, this statement "persuade[d him] to enter a guilty plea." *Id*. at 13. Subsequently, however, Appellant learned that Thomas Morrow was terminated from his employment as a police officer for "willful falsification" of his employment application. *Id*. at 10. Because Appellant entered a guilty plea based upon counsel's opinion

_____

s]tatement." PCRA Court Opinion, 6/28/23, at 1. The PCRA court then goes on to address Appellant's claim which is identical to the issue set forth in the Rule 1925(b) statement attached to Appellant's brief. *Compare* PCRA Court's Rule 1925(a) opinion, 6/28/23, at 1; Appellant's Brief at Appendix C. Therefore, the lack of a Rule 1925(b) statement in the certified record or the trial court's docket appears to be the result of either a breakdown in the court system or Appellant's counsel's ineffective assistance. Either way, we decline to remand the instant matter and will address the merits of Appellant's claims. *See Commonwealth v. Andrews*, 213 A.3d 1004, 1010 (Pa. Super. 2019) (declining to find the appellant's claims waived pursuant to Pa.R.A.P. 1925(c)(3) and declining to remand to the trial court because the trial court addressed the issues raised in the appellant's untimely 1925(b) statement).

regarding Thomas Morrow's potential credibility, Appellant claims that he entered an invalid guilty plea based upon trial counsel's ineffective assistance.

Our standard of review for challenges to the denial and dismissal of petitions filed pursuant to the PCRA is well-settled.

> [W]e must determine whether the findings of the PCRA court are supported by the record and whether the court's legal conclusions are free from error. The findings of the PCRA court and the evidence of record are viewed in a light most favorable to the prevailing party. The PCRA court's credibility determinations, when supported by the record, are binding; however, this [C]ourt applies a *de novo* standard of review to the PCRA court's legal conclusions. We must keep in mind that the petitioner has the burden of persuading this Court that the PCRA court erred and that such error requires relief. Finally, this Court may affirm a valid judgment or order for any reason appearing of record.

***Commonwealth v. Montalvo***, 205 A.3d 274, 286 (Pa. 2019) (internal citations omitted).

Importantly,

> [I]n order to obtain relief based on an [ineffective assistance of counsel] claim, a petitioner must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error. Trial counsel is presumed to be effective, and [an a]ppellant bears the burden of pleading and proving each of the three factors by a preponderance of the evidence.
>
> The right to constitutionally effective assistance of counsel extends to counsel's role in guiding his client with regard to the consequences of entering into a guilty plea. Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where

- 6 -

the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. Thus, to establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. The reasonable probability test is not a stringent one; it merely refers to a probability sufficient to undermine confidence in the outcome.

[Central] to the question of whether a defendant's plea was entered voluntarily and knowingly is the fact that the defendant know[s] and understand[s] the nature of the offenses charged in as plain a fashion as possible. A guilty plea is not a ceremony of innocence, it is an occasion where one offers a confession of guilt. Thus, a trial judge and, by extension, plea counsel is not required to go to unnecessary lengths to discuss every nuance of the law regarding a defendant's waiver of his right to a jury trial in order to render a guilty plea voluntary and knowing.

*Commonwealth v. Barndt*, 74 A.3d 185, 191-193 (Pa. Super. 2013)

(cleaned up; quotation marks and citations omitted).

Moreover,

[o]ur law presumes that a defendant who enters a guilty plea was aware of what he was doing. He bears the burden of proving otherwise.

* * *

The longstanding rule of Pennsylvania law is that a defendant may not challenge his guilty plea by asserting that he lied while under oath, even if he avers that counsel induced the lies. A person who elects to plead guilty is bound by the statements he makes in open court while under oath and may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy.

* * *

A defendant who elects to plead guilty has a duty to answer questions truthfully. We cannot permit a defendant to postpone

- 7 -

the final disposition of his case by lying to the court and later alleging that his lies were induced by the prompting of counsel.

*Commonwealth v. Yeomans*, 24 A.3d 1044, 1047 (Pa. Super. 2011) (citations omitted). "The law does not require that the defendant be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that his decision to plead guilty be knowingly, voluntarily, and intelligently made." *Commonwealth v. Timchak*, 69 A.3d 765, 770 (Pa. Super. 2013) (internal citations and brackets omitted).

Upon review, we conclude that Appellant's claim fails – and does so for two reasons. First, in contrast to Appellant's claims, it is apparent that Appellant entered a knowing, voluntary, and intelligent guilty plea. Indeed, a review of the certified record reveals that Appellant initially signed a written guilty plea statement, wherein he agreed to plead guilty to first-degree murder, with a sentence of life without parole, and aggravated assault, with a sentence of 10 to 20 years' incarceration. Guilty Plea Statement, 11/29/17, at *3 (unpaginated). In addition, Appellant also agreed, by signing the guilty plea statement, that his decision to enter a guilty plea was voluntary. *Id.* at *4. Thereafter, "[b]oth counsel and the [trial c]ourt conducted a thorough and detailed colloquy" of Appellant, confirming that he entered his guilty plea knowingly and voluntarily. PCRA Court Opinion, 6/28/23, at 3. The relevant exchange is as follows:

> [Trial counsel]: Stephen, do you understand that – that the entry of a plea, a guilty plea, has to be knowing, intelligent and voluntary? Do you understand that?

[Appellant]: Yes, I do.

[Trial counsel]: Have we gone over that?

[Appellant]: We have.

[Trial counsel]: Knowingly means you know what you [are] doing. Do you know what – do you know what [is] going on today? Do you know what it is that you [are] doing?

[Appellant]: Yes, sir.

[Trial counsel]: Okay. Voluntarily means you [are] doing it of your free will. Other than the negotiated plea that [has] been announced in court, has anybody promised you anything?

[Appellant]: No, sir.

[Trial counsel]: Has anybody threatened you to get you to plead guilty?

[Appellant]: No, sir.

[Trial counsel]: Okay. Intelligently means that you know what your options are, you have weighed your options, and you [have] chosen this one. Is that what you [have] done?

[Appellant]: Yes, sir.

[Trial counsel]: Earlier yesterday and earlier today, did we provide you with a four-page statement called . . . Guilty Plea Statement Instructions?

[Appellant]: You did.

[Trial counsel]: And did you read the entire document?

[Appellant]: In detail.

[Trial counsel]: And did you place your initials on the line next to each question?

[Appellant]: Yes, I did.

[Trial counsel]: Signifying that you understood what the question says?

[Appellant]: That [is] correct.

[Trial counsel]: And was I – was either I or Ms. Welsh or Ms. Saadzoi available to answer any questions that you had about anything in this paper?

[Appellant]: Yes, you were.

[Trial counsel]: And did you sign the document on the back? Is that your signature – on the last page?

[Appellant]: That is my signature.

N.T. Guilty Plea/Sentencing Hearing, 11/29/17, at 12-13. The trial court then accepted Appellant's plea and issued his sentence. Importantly, Appellant is bound by the statements he made during his oral and written guilty plea colloquies which demonstrate that his decision to enter a negotiated guilty plea was made knowingly, voluntarily, and intelligently. **See Yeomans**, **supra**.

Second, even if we consider Appellant's claim that, if trial counsel investigated Thomas Morrow and his subsequent termination from employment, Appellant would not have entered a negotiated guilty plea, we would still find that Appellant is not entitled to relief.

Rule 608(b)(2) of the Pennsylvania Rules of Evidence provides:

**(b) Specific Instances of Conduct.** Except as provided in Rule 609 (relating to evidence of conviction of crime),

(1) the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct; however,

(2) in the discretion of the court, the credibility of a witness who testifies as to the reputation of another witness for truthfulness or untruthfulness may be attacked by cross-examination concerning specific instances of conduct (not including arrests) of the other witness, if they are

probative of truthfulness or untruthfulness; but extrinsic evidence thereof is not admissible.

Pa.R.E. 608(b)(1)-(2).

Importantly, this Court previously stated:

[W]henever the accused seeks to offer character evidence for purposes of attacking or supporting the credibility of a victim who testifies, the admissibility of such evidence is governed by Pa.R.E. 608 and proof of specific incidents of conduct by either cross-examination or extrinsic evidence is prohibited.

***Commonwealth v. Minich***, 4 A.3d 1063, 1072 (Pa. Super. 2010) (holding that the defendant was prohibited from introducing evidence that the victim lied in school "about matters wholly unrelated to the allegations against [him]" under Pa.R.E. 608). Thus, under Rule 608, only evidence of a witness' general reputation for truthfulness or untruthfulness is admissible to challenge the witness' credibility.

In this instance, evidence of Thomas Morrow's termination of employment, including the reasons behind it, is "wholly unrelated" to the allegations against Appellant, *i.e.*, Valerie Morrow's murder and Appellant's attack of her daughter and Thomas Morrow, and would be deemed inadmissible at trial. ***Id.*** As such, trial counsel cannot be faulted for failing to investigate Thomas Morrow's employment status or otherwise pursue such a meritless claim. ***See Commonwealth v. Freeland***, 106 A.3d 768, 778 (Pa. Super. 2014) ("[I]t is axiomatic that [trial] counsel will not be considered ineffective for failing to pursue meritless claims.") (quotation omitted). Hence, Appellant's current claim that, had he been aware of Thomas Morrow's

termination, he would not have entered a guilty plea and proceeded to trial with the hopes of attacking Thomas Morrow's credibility, is baseless.

Based upon all the foregoing, we conclude that Appellant entered a knowing, voluntary and intelligent guilty plea. We further conclude that the PCRA court correctly dismissed Appellant's PCRA petition.

Order affirmed.

Judge Bowes joins this memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/25/2024

- 12 -